## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CEDRIC WOOLARD,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 3:**19cv1256 **(VLB)** |
| | : | |
| **ANTONIO SANTIAGO, ET AL.,** | : | |
| **Defendants.** | : | |

## <u>INITIAL REVIEW ORDER</u>

The plaintiff, Cedric Woolard, is currently confined at Corrigan-Radgowski Correctional Institution ("Corrigan-Radgowski").  He has filed an amended civil rights complaint against Director of Security Antonio Santiago, Security Risk Group Coordinator Aldi ("SRG Coordinator Aldi"), Warden Stephen Faucher, Lieutenants Julian Russell and Eberle, Correctional Officers Jerome Payne, Franklyn Wray and Richard Irizarry, Megan E. Tyburski and the Department of Correction.  He has also filed a motion for speedy docket.  For the reasons set forth below, the court will dismiss the amended complaint in part and will deny the motion for speedy docket.

I.   <u>Motion for Speedy Docket [Doc. No. 13]</u>

Plaintiff asks the court to place his case on the speedy docket "due to ongoing problems inside . . . Department of Corrections regarding the S.R.G. Program."  Mot. at 1.  There is no such thing as a "speedy docket."  Furthermore, Plaintiff provides no further explanation or description of the "ongoing problems" within the SRG program and does not request any other form of relief from the

court. Plaintiff does not allege facts which establish that he is likely to succeed on the merits; likely to suffer irreparable injury absent expedited disposition or that his claims raise serious questions going to the merits; that the balance of hardships weighs in his favor, or that expediting his case is in the public interest. See *Citigroup Global Mkts. v. VGC Special Opportunities Master Fund Ltd.* 598 F. 3d 30 (2d Cir. 2010).

## II.   Amended Complaint [Doc. No. 8]

Plaintiff alleges that the defendants violated his First and Fourteenth Amendment rights in connection with his designation as an SRG member and placement in the SRG phase program in April and May 2018. He sues the defendants in their individual and official capacities for monetary damages and declaratory and injunctive relief.

### A.   Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed allegations are not required, a complaint must include enough facts "to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

It is well-established that *"[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).   However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

B.    <u>Facts</u>

3

On April 16, 2018, Department of Correction officials admitted Plaintiff to New Haven Correctional Center as a pretrial detainee.  *See* Am. Compl. at 3 ¶ 1. On April 19, 2018, Correctional Officer Payne and Lieutenant Russell informed Plaintiff that they had viewed his Facebook page and observed photographs of him "throwing up gangs signs" and participating in gang activities.  *Id.* ¶¶ 2-3. Prison officials then escorted Plaintiff to a cell in the restrictive housing unit.  *Id.* ¶ 4.

On April 26, 2018, Plaintiff participated in a hearing at which Lieutenant Eberle presided as the hearing officer.  *Id.* ¶ 5.  Lieutenant Eberle informed Plaintiff that he would not be receiving a disciplinary report charging him with SRG affiliation and would not be receiving any sanctions.  *Id.* ¶ 6.  She indicated that he was already guilty of being affiliated with SRG because of the photographs and other information on his Facebook page and that he would be sent to phase three of the SRG program.  *Id.* ¶¶ 5, 7-8.  The hearing ended after Plaintiff signed a document.  *Id.* ¶ 9.

Two weeks later, prison officials transferred Plaintiff to Walker Correctional Institution to complete phase two of the SRG program.  *Id.* ¶ 10.  Plaintiff was placed in a "ticket group" even though he had not received a ticket or other sanctions.  *Id.*

On February 19, 2019, pursuant to Plaintiff's pleas of guilty to multiple criminal charges, a judge of the Connecticut Superior Court for the Judicial District of New Haven sentenced Plaintiff to a total effective sentence of two years

of imprisonment.[1]   In March or April  2019, a counselor at Corrigan-Radgowski confirmed that Plaintiff had never received a disciplinary ticket for SRG affiliation in April 2018.  *Id.* at 4 ¶¶ 12-13.

During his confinement in phase three of the SRG program at Corrigan-Radgowski, Plaintiff experienced many restrictive conditions.  *Id.* at 11,13 ¶¶ 28-53. Those conditions included a lack of access to a library and vocational and educational classes, limited access to showers, telephone calls, visits from family members and time in the gym and spending limits for commissary purchases. *Id.* An inmate participating in the SRG program may not receive good time credits or be released to a halfway house or on parole.  *Id.* at 11 ¶ 38.

C.    Discussion

Plaintiff asserts two federal claims against the Defendants.  *Id.* at 19.  He contends that the Defendants violated his Fourteenth Amendment procedural due process rights in connection with his transfer to the restrictive housing unit at New Haven Correctional Center, his designation as an SRG member and his

---

[1]   **The State of Connecticut Judicial Branch website reflects that on January 7, 2019, Plaintiff pleaded guilty to one count of unlawful restraint in the first degree, one count of assault in the third degree and one count of threatening in the second degree.  *See State v. Woolard*, Docket No. N23N-CR18-0183886-S. On February 19, 2019, a judge sentenced Plaintiff to five years of imprisonment, execution suspended after one year and followed by five years of probation on the unlawful restraint charge, one year of imprisonment, execution suspended after six months and followed by three years of probation on the assault charge and one year of imprisonment, execution suspended after six months and followed by three years of probation on the threatening charge.  This information may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions – by Docket Number using: N23N-CR18-0183886-S (Last visited on January 21, 2020).**

placement in the SRG phase program and violated his First Amendment rights by designating him as an SRG member and requiring him to complete the SRG phase program in retaliation for posts he made on his Facebook page prior to his arrest and incarceration. *Id.* He also contends that the Defendants violated his rights under Article First, §§ 4, 5, 8, 9 and 20 of the Connecticut Constitution. *Id.*

### 1.   Eleventh Amendment

Plaintiff seeks punitive and compensatory damages, a declaratory judgment that the Defendants violated his federal constitutional rights and an injunction directing Director Santiago and SRG Coordinator Aldi to remove him from the SRG program and to place him in general population. *Id.* at 21.

To the extent that Plaintiff seeks monetary relief from the defendants in their official capacities, the request is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Accordingly, the request for compensatory and punitive damages from the defendants in their official capacities is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or

continuing violation of federal law or a threat of a violation of federal law in the future.  *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).  Plaintiff's request for a declaration that the defendants violated his federal constitutional rights in the past is barred by the Eleventh Amendment.  *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*... to claims for retrospective relief") (citations omitted).  Furthermore, if Plaintiff were to prevail on either his First or Fourteenth Amendment claims, the court necessarily would determine that the defendants had violated his constitutional rights.  Thus, a separate award of declaratory relief is unnecessary.  Accordingly, the request for a declaratory judgment is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).  The court considers Plaintiff's request for prospective injunctive relief below.

###### 2.   Department of Correction

To state a claim under section 1983, Plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him of a federally protected right.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, (1989) (state and state agencies not persons within meaning

7

of 42 U.S.C. § 1983).

The Department of Correction is a department within the executive branch of the State of Connecticut.  *See* Conn. Gen. Stat. 4-38c ("There shall be within the executive branch of state government the following departments . . . Department of Correction. . . .").  As an entity within the executive branch of the State of Connecticut, the Department of Correction is not a person subject to liability under section 1983.  *See El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2018 WL 4604308, at *11 (D. Conn. Sept. 25, 2018) ("A correctional institution is not a "person" within the meaning of 42 U.S.C. § 1983 so there is no arguable legal basis for proceeding with a § 1983 claim against [New Haven Correctional Center]"); *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008) ("Department of Corrections is an arm of the State of Connecticut") (citation omitted).  All claims against the Department of Correction are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

### 3.   Warden Faucher and Officers Wray and Irizarry

Plaintiff lists Officers Wray and Irizarry in the caption and description of parties but does not refer to either of them in the body of the amended complaint. Thus, there are no facts to support Plaintiff's claim that Officers Wray and Irizarry retaliated against him by placing him in the restrictive housing unit because of his posts on Facebook.  The only allegations related to the decision to place Plaintiff in the restrictive housing unit are directed to Lieutenant Russell and Officer Payne.  Am. Compl. at 3 ¶¶ 2-4.  Plaintiff does not allege that Officer Wray

or Officer Irizarry were present for or involved in that determination.  To the extent that either officer may have escorted Plaintiff to the restrictive housing unit at the instruction of Lieutenant Russell and Officer Payne, such an allegation does not state a claim that Wray or Irizarry retaliated against Plaintiff for exercising his right to free speech.  Nor does Plaintiff allege or do the exhibits attached to the amended complaint suggest that either Officer Wray or Officer Irizarry was responsible for or involved in providing notice to him regarding the basis for his placement in the restrictive housing unit or was involved in the hearing to address his designation as an SRG member.  *See id.* at 3 ¶¶ 2-4, 40-41. As such, Plaintiff has not alleged that either Officer Wray or Officer Irizarry violated his federally or constitutionally protected rights or his rights under the Connecticut Constitution.  The allegations against Officers Wray and Irizarry are dismissed as lacking an arguable factual or legal basis. *See* 28 U.S.C. § 1915A(b)(1).

Stephen Faucher is listed in the caption of the amended complaint as the warden at Corrigan-Radgowski but is not included in the description of parties. Plaintiff asserts no allegations or claims against Warden Faucher.  Absent any facts regarding the conduct of Warden Faucher, as a supervisor or otherwise, Plaintiff has not alleged that Faucher violated his First or Fourteenth Amendment rights or his rights under the Connecticut Constitution.  The claims against Warden Faucher are dismissed as lacking an arguable factual or legal basis.  *See* 28 U.S.C. § 1915A(b)(1).

###### 4.    First Amendment – Free Speech/Retaliation

Plaintiff asserts that Lieutenant Russell and Officer Payne punished him because of his activities on Facebook prior to his arrest by placing him in the restrictive housing unit and designating him as an SRG member.  He contends that the actions of these defendants constituted retaliation for his exercise of free speech on Facebook and violated his First Amendment rights.

"A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more."  *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017). The forum in which Plaintiff spoke does not effect the protection afforded his speech. The Supreme Court has identified "cyberspace—the vast democratic forums of the internet in general . . . and social media in particular" as an important place for the exchange of views and ideas.  *Id.* (internal quotation marks and citation omitted).   Thus, Plaintiff's Facebook posts constitute the exercise of a protected First Amendment right.  *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019) ("As a general matter, social media is entitled to the same First Amendment protections as other forms of media.") (citing *Packingham*, 137 S. Ct. at 1735-36).

Plaintiff alleges that his designation as an SRG member and his placement in the SRG program involved his exposure to restrictive conditions of confinement.  The court concludes that Plaintiff has plausibly met the adverse action component of a retaliation claim.  *See Benway v. Aldi*, No. 3:19-CV-208

(VAB), 2019 WL 4762117, at *6-7 (D. Conn. Sept. 29, 2019) (restrictions on detainee's commissary, telephone, visitation and recreation privileges based on detainee's placement in SRG program due to Facebook posts sufficiently adverse to state First Amendment retaliation claim) (citing *Scozzari v. Santiago*, No. 3:19-CV-00229 (JAM), 2019 WL 1921858, at *4 (D. Conn. Apr. 29, 2019) ("placing an inmate in distinctly harsher conditions because of his protected speech activity is a sufficiently adverse action to support a retaliation claim")).

In addition, the allegation that Plaintiff's Facebook posts led immediately to his and designation and confinement under restrictive conditions meets the causal connection component. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding that passage of only six months between protected activity and adverse action was sufficient to support inference of causal connection). The Court does recognize however that the facts do not suggest a retaliatory motive.

The First Amendment retaliation claim will proceed against Lieutenant Russell and Officer Payne in their individual capacities. Although motions to dismiss are disfavored after initial review, because there appears to be no retaliatory motive, the Court would not disfavor a motion to dismiss these claims.

### 5.    Fourteenth Amendment Procedural Due Process

In his description of legal claims, Plaintiff contends that Lieutenant Russell and Eberle and Officer Payne failed to provide him with notice of the basis for the decision to place him in the restrictive housing unit pending a hearing to

11

determine whether to designate him as an SRG member.  He further contends that at the hearing held on April 26, 2018, Lieutenant Eberle and Megan E. Tyburski did not provide him with an opportunity to properly challenge the decision to designate him as an SRG member or the decision to require him to complete the SRG phase program.  Am. Compl. at 19.

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property."  U.S Const. amend. XIV.  "Liberty interests protected by the Fourteenth Amendment may arise from two sources -- the Due Process Clause itself and the laws of the States."  *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

A pretrial detainee's "liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty[; thus,] restrictions on pretrial detainees ... may not amount to punishment ...." *Benjamin v. Fraser,* 264 F.3d 175, 188 (2d Cir. 2001) (citations and internal quotation marks omitted).  Unlike a sentenced inmate, a pretrial detainee need not satisfy the standard of "atypical and significant hardship" outlined in *Sandin v. Conner,* 515 U.S. 472 (1995), to establish a protected liberty interest.  *Id.* at 188-89 ("a pretrial detainee need not meet such a stringent standard because "[a]

detainee's interest in freedom from unjustified infliction of pain and injury is more substantial ....").

To determine punitive intent in the absence of an allegation that the defendant clearly expressed an intent to punish a detainee, a court may consider "'whether an alternative purpose to which [the condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69 (1963)).  Thus, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539.  If, however, a restriction or condition is "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.*

Valid governmental objectives that could justify the imposition of restrictive conditions of confinement on pretrial detainees include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is detained."  *Id.* at 540.

In *Hewitt*, the Supreme Court considered what process should be afforded an inmate who had been placed in administrative segregation pending an investigation into a disciplinary charge.  459 U.S. at 474.  The Court explained that

13

it was appropriate to place an inmate in administrative segregation "when necessary to incapacitate an inmate who "represents a security threat" or to "complet[e] ... an investigation into misconduct charges." *Id.* at 476. The Court held that in connection with an inmate's placement on administrative segregation, he or she "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476. In *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons.

If the placement in administrative segregation is for punitive or disciplinary reasons, the procedural protections in *Wolff v. McDonnel*, 418 U.S. 539 (1973), apply. *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (citing *Benjamin*, 264 F.3d at 190). In *Wolff*, the Supreme Court held that an inmate charged with a disciplinary violation that may result in the loss of good-time credits is entitled to written notice of the charges at least twenty-four hours in advance of the hearing, the opportunity to present witnesses and documentary evidence before an impartial hearing officer or committee as long as doing so will not jeopardize prison safety and security, and a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action. 418 U.S. at 564-66. An inmate has no right to

14

retained or appointed counsel at a disciplinary hearing, but in some circumstances may be entitled to the appointment of an advocate or assistance from a fellow inmate. *Id.* at 570.

a.   <u>Issuance of Disciplinary Report</u>

Plaintiff alleges that on April 19, 2018, Lieutenant Russell and Officer Payne accused him of being a member of an SRG based on information on his Facebook page and directed officers to transfer him to a cell in the restrictive housing unit. He asserts that Lieutenant Russell and Officer Payne failed to provide him with notice of the disciplinary charge that was the basis of his placement in the restrictive housing unit or a hearing to challenge the charge.

Plaintiff's claim that Lieutenant Russell and Officer Payne violated his procedural due process rights is based on his assumption that he could not be placed in the restrictive housing unit without having received a disciplinary report charging him with SRG affiliation.  State of Connecticut Department of Correction Administrative Directive 6.14 provides, however, that an inmate or detainee may be designated as an SRG member whether or not a disciplinary report has been issued charging the inmate or detainee of SRG affiliation.  *See* Administrative Directive 6.14(7)(A)&(B).[2]   Thus, the issuance of a disciplinary report was not a

---

[2]  **The court takes judicial notice of State of Connecticut Department of Correction Administrative Directive 6.14 (effective as of June 7, 2013), available on the Department of Correction's website under Directives and Policies at: https://portal.ct.gov/DOC/AD/AD-Chapter-6.   See Nicholson v. Murphy, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at \*7 n.2 (D. Conn. Sept. 19, 2003) (taking judicial notice of Administrative Directives as "written guidelines, promulgated pursuant to Connecticut General Statutes § 18–81, establishing the parameters of**

prerequisite to Plaintiff's transfer to the restrictive housing unit on April 19, 2018.

At the hearing on April 26, 2018, Lieutenant Eberle informed Plaintiff that he had not been issued a disciplinary report and that his designation as a member of an SRG was due to his posts on Facebook prior to his arrest and incarceration. Thus, any claim that Lieutenant Russell and Officer Payne violated his procedural due process rights because they did not give him notice of a disciplinary report or provide him with a hearing to challenge the disciplinary report is dismissed as lacking an arguable factual or legal basis.

### b.   SRG Member Designation Hearing

Plaintiff cv

,suggests that there was no legitimate safety or security justification for designating him as an SRG member and placing in in an SRG Program based solely on his posts and activity on Facebook prior to his arrest.   Plaintiff contends that the decisions made by Lieutenant Eberle and Megan Tyburski to designate him as a member of an SRG and to place in the SRG program were made for punitive rather than administrative reasons and that the conditions that he endured in the SRG program were punitive in nature.   Given the alleged punitive conditions to which Plaintiff was exposed, the procedural protections set forth in *Wolff* were applicable to Plaintiff's SRG member designation hearing.   *See Benjamin*, 264 F.3d at 190.

---

operation for Connecticut facilities.")  (citation omitted).

Attached to the amended complaint are exhibits related to Plaintiff's SRG hearing held on April 26, 2019.  *See* Am. Compl. Exs. at 40-41.  One of the exhibits is an SRG Membership Hearing Notification – Security Division form and another exhibit is a SRG Member Determination form.  Both forms are dated April 19, 2018 and include the allegations made against Plaintiff by the New Haven Correctional Center Intelligence unit.  These charges of gang affiliation were based on images of Plaintiff posted on his Facebook page depicting him engaging in gang activities and using gang hand signs.  The Hearing Notification form that is addressed to the Security Division indicates that Plaintiff's hearing was scheduled for April 25, 2018 to determine if Plaintiff will be designated as a member of an SRG affiliated with the Bloods and is signed by Megan E. Tyburski. *Id.* at 40.  The SRG Member Determination form is signed by Officer Payne.  *Id.* at 41.

There is a notation on the Hearing Notification form that Plaintiff refused to sign the SRG Membership Hearing Notification form and the Determination form. *Id.* at 40.  Plaintiff did not attach the SRG Membership Hearing Notification form to the amended complaint.  Nor is there a space on the Determination form for an inmate signature or any indication that Plaintiff read or was made aware of the allegations regarding his Facebook posts that were included on that form.  *See id.* Thus, it is not clear from these exhibits whether, prior to the hearing, Plaintiff received notice of the specific allegations against him regarding his conduct in connection with SRG/gang-related activities.

Plaintiff concedes that he attended a hearing on April 26, 2018 and that Lieutenant Eberle informed him that he would not be receiving a disciplinary report and that his designation as a member of an SRG would be based on his Facebook posts.  In his allegations pertaining to the hearing, Plaintiff asserts that prior to the hearing, he did not receive adequate notice of the allegations regarding his gang-related Facebook posts from Lieutenant Russell, Officer Payne, Megan Tyburski or Lieutenant Eberle and that during the hearing, he did not have the opportunity to express his views regarding the allegation that he should be designated as a member of an SRG.

The court concludes that Plaintiff has stated a plausible claim that Lieutenant Russell, Officer Payne, Megan Tyburski and Lieutenant Eberle failed to provide him with notice of the allegations against him at least 24 hours prior to the hearing as required by *Wolff* and Lieutenant Eberle and Megan Tyburski failed to provide him with an opportunity to present his views or evidence at the hearing as required by *Wolff*.  This Fourteenth Amendment procedural due process claim related to the SRG designation hearing will proceed against Lieutenant Eberle, Lieutenant Russell, Officer Payne and Megan Tyburski in their individual capacities.  *See* 28 U.S.C. § 1915A(b)(1).

5.   <u>Supervisory Liability</u>

Plaintiff describes SRG Coordinator Aldi as legally responsible for the operation of the Department of Correction and the welfare of inmates in the SRG program and describes Director Santiago as legally responsible for the operation

18

of the Department of Correction and the welfare of inmates in all prison facilities. He does not refer to either defendant in the body of the amended complaint. Thus, he has not alleged that Director Santiago or SRG Coordinator Aldi was directly involved in his initial transfer to the restrictive housing unit, the SRG designation hearing or his placement in the SRG program.  In his description of legal claims, he asserts that both defendants supervised Lieutenant Russell and Officer Payne and failed to intervene to prevent their misconduct.  Am. Compl. at 19 ¶ 1.

"[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant."  *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).  To allege personal involvement, a plaintiff is required to plead that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[3]  Once a plaintiff properly alleges that a defendant was personally involved in a

---

[3]  **The Second Circuit has not revisited the criteria for supervisory liability**

constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." **Raspardo**, 770 F.3d at 116.

Plaintiff has asserted no facts to meet any of the categories for personal involvement set forth in *Colon*. Plaintiff's conclusory allegation that Director Santiago and SRG Coordinator Aldi are liable because they are supervisors who failed to intervene after becoming aware of the misconduct of their subordinates or created an unconstitutional policy under which unconstitutional practices occurred does not demonstrate the personal involvement of Santiago or Aldi in the alleged violations of Plaintiff's First or Fourteenth Amendment rights. The First Amendment retaliation claim and Fourteenth Amendment procedural due process claim asserted against Director Santiago and SRG Coordinator Aldi in their individual capacities are dismissed. *See* 28 U.S.C. § 1915A(b)(1). Both claims will proceed against Director Santiago and SRG Coordinator Aldi in their official capacities to the extent that Plaintiff seeks injunctive relief related to his removal from the SRG Program.

### 6.  Conditions at Corrigan-Radgowski

---

following Iqbal. See Shaw v. Prindle, 661 F. App'x 16, 18 (2d Cir. 2016) (finding it unnecessary to "reach Iqbal's impact on Colon in this case"); Raspardo, 770 F.3d at 117 ("We have not yet determined the contours of the supervisory liability test ... after Iqbal."); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that decision in Iqbal "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but finding it unnecessary to reach the impact of Iqbal on the personal involvement requirements set forth in Colon). Because it is unclear as to whether Iqbal overrules or limits Colon, the court will continue to apply the

Plaintiff mentions that beginning in March or April 2019, he was in phase three of the SRG program at Corrigan-Radgowski.  He describes various conditions that he experienced during his confinement at that facility.  As of February 2019, Plaintiff was no longer a pretrial detainee because he had been sentenced by a judge to a term of imprisonment.  *See State v. Woolard*, Docket No. N23N-CR18-0183886-S (Conn. Super. Ct. Feb. 19, 2019 – Sentencing Hearing).  Thus, any allegations regarding conditions of confinement at Corrigan-Radgowski are analyzed under the Eighth Amendment.

In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities."  *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element.  To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity

---

categories for supervisory liability set forth by the Second Circuit.

or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that Defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Plaintiff does not allege that any defendant was aware of or responsible for the conditions of confinement in phase three of the SRG program. Nor does he allege that any of the conditions deprived him of a basis human need or necessity. *See Doyle v. Santiago*, No. 3:19-CV-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) (Although the conditions described [in phases 2 and 3 of the SRG program] may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional.); *Pagan v. Dougherty*, No.

22

3:18-cv-1668(VLB), 2019 WL 2616975 (D. Conn. June 26, 2019) (allegations that during confinement in SRG program prisoner was subjected to limitations on telephone use, visits from friends and family, eligibility for parole, access to educational and vocational services, and showers and was confined in his cell for 23 hours per day did not support an Eighth Amendment claim for inhumane conditions of confinement) (citing cases).  Because Plaintiff has not alleged facts to meet the objective prong of the Eighth Amendment conditions standard, the allegations regarding conditions of confinement at Corrigan-Radgowski beginning in March or April 2019 are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

7.   State Law Claims

In addition to his federal constitutional claims, Plaintiff alleges that the defendants violated his rights under Article First §§ 4, 5, 8, 9, and 20 of the Connecticut Constitution.  *See* Am. Compl. at 19.  He does not assert any facts in support of these state constitutional claims.

a.   Article First, Section 9

Article First § 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."  Conn. Const. art. 1, § 9.  In *Binnette v. Sabo*, 244 Conn. 23, 41-47, 710 A.2d 688, 693-99 (1998), the Connecticut Supreme Court relied on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to recognize a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution that arose out of an

23

alleged unreasonable search and seizure and unlawful arrest of the plaintiff. In reaching its decision, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47, 710 A.2d at 700.

Research has revealed no cases recognizing a private right of action for money damages under Article First, § 9 of the Connecticut Constitution for punishment suffered by an inmate or detainee during his confinement in a state prison facility. *See Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *1, 6-7 & n.6 (Conn. Super. Ct. Sept. 6, 2001) (narrowly construing *Binette* in a civil action asserting claims of violations of an inmate's rights under the United States and Connecticut Constitutions, including claims of "cruel and unusual punishment under the federal constitution" and a claim of a deprivation "of his rights under ... article first, § 9" of the state constitution, and "declin[ing] to recognize [a] damages action[ ] under the Connecticut and United States constitutions under the circumstances of th[e] case").  Thus, although the Connecticut Supreme Court created a cause of action under Article First, §§ 7 and 9 for a *Bivens*-type claim, it has not applied § 9 in the context of a case filed by an inmate or a detainee involving claims relating to placement in a program involving restrictive conditions of confinement.  Therefore, the court declines to exercise supplemental jurisdiction over the claim asserted pursuant to Article First, § 9 of the Connecticut Constitution.

b.      Article First, Sections 8, 20

Article First, § 8 provides in pertinent part: "No person shall be . . . deprived of life, liberty or property with due process of law. . . ." Conn. Const. art. 1, § 8.  Article First § 20 provides that "No person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

This court and the Connecticut Superior Court have routinely declined to recognize a private right of action under Article first sections 8 and 20 of the Connecticut Constitution.  *See, e.g., Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (concluding "[t]here is no established private right of action under the religious discrimination, due process, or equal protection provisions (Article First §§ 3, 8, and 20)); *Minto v. Dep't of Mental Health & Addiction Servs.*, No. HHDCV176076730S, 2018 WL 710124, at *9 (Conn. Super. Ct. Jan. 11, 2018) ("Connecticut courts have unanimously declined to recognize a private cause of action under article first, § 20"); *Doe v. Crowley v. Town of Enfield*, No. 3:14 cv 01903 (MPS), 2015 WL 4162435, at *3 (D. Conn. July 9, 2015) (declining to recognize a private right of action under Article First, §§ 8 and 20); *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 199 (D. Conn. 2010) (declining to recognize a private right of action under, *inter alia*, Article First § 20); *Lopez v. Smiley*, 375 F. Supp. 2d 19, 23-26 (D. Conn. 2005) (declining to exercise supplemental jurisdiction over novel,

25

complex and undeveloped claims under Article First, §§ 4, 5, 7, 8, 9, and 14); *Torres*, 2001 WL 1178581, at \*5-\*7 (Conn. Super. Ct. Sept. 6, 2001) (refusing to recognize prisoner's claims for money damages and injunctive relief brought directly under Article First, §§ 1, 4, 8, 9, 14 and 20 of the Connecticut Constitution).  The court concludes that it would be inappropriate to exercise supplemental jurisdiction over potential claims under the Connecticut constitution that raise new and undeveloped issues under state law.  *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raised a novel or complex issue of State Law...."). Accordingly, the court declines to exercise supplemental jurisdiction over the claims asserted under Article First, §§ 8 and 20 of the Connecticut Constitution.

### c.   Article First Sections 4 and 5

Article First, § 4 of the Connecticut Constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."  Conn. Const. art. 1 § 4. Article First, § 5 provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."  Conn. Const. art. 1, § 5.

The Connecticut Supreme Court has held that Article First, § 5 "literally applies only to the passage of laws restraining freedom of speech or press and does not by its terms afford protection provided by § 4 against restrictions the exercise of those rights which government officials may impose whether or not sanctioned by law."  *Cologne v. Westfarms Associates,* 192 Conn. 48, 63, 469

26

A.2d 1201, 1209 (1984).   Plaintiff does not challenge a state statute as being violative of his right to free speech.   Thus, Plaintiff has failed to state a claim of a violation of Article First, § 5 and the claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).   *See Niblack v. Brighthaupt*, No. CV155035513, 2018 WL 1386211, at *5 (Conn. Super. Ct. Feb. 20, 2018) (dismissing inmate's claim that rejection and return of packages by mail room staff at prison facility violated his right to free speech under Article First, § 5 of the Connecticut Constitution because claim did not relate to the passage of a law restraining freedom of speech and observing that violation of his right to free speech derived from Article First, § 4 of the Connecticut Constitution) (citing *Cologne,* 192 Conn. at 63, 469 A.2d at 1209).

In *Lopez*, 375 F. Supp. 2d 19, the court acknowledged that the Connecticut Supreme Court had recognized a private right of action under Article First, §§ 4 and 14 for declaratory or injunctive relief but noted the absence of Connecticut state court cases recognizing a private right of action for money damages under Article First, § 4.   *Id.* at 24 n.2 (collecting cases).   The court refrained "from exercising supplemental jurisdiction over all of Mr. Lopez's Connecticut constitutional claims (both those seeking monetary damages and those seeking injunctive or declaratory relief." *Id.* at 26.

Research has revealed no cases since *Lopez* that have recognized a claim for money damages under Article First, § 4.   *See Williams v. Walter Ford*, No. 3:14-CV-1181 (VAB), 2015 WL 8490910, at *9 (D. Conn. Dec. 10, 2015) (finding "no state cases recognizing a claim for money damages under this [free speech] provision"

27

of the Connecticut Constitution) (citing *Marshall v. Town of Middlefield*, No. 3:10-cv-1009(JCH), 2012 WL 601783, at *9 (D. Conn. Feb. 23, 2012) ("The court finds no cases in which a Connecticut court has recognized a private right of action for money damages under either section four or twenty and multiple cases in which courts have expressly declined to recognize such claims."). Nor has the court found any cases recognizing a retaliation claim asserted directly under Article First, § 4.[4] Accordingly, the court declines to exercise supplemental jurisdiction over any claim asserted under Article First, § 4 of the Connecticut Constitution. *See Kelly v. Santiago*, No. 3:18-CV-01796-VAB, 2019 WL 3574631, at *11–13 (D. Conn. Aug. 6, 2019) ("Although Mr. Kelly includes requests for declaratory and injunctive relief in his prayer for relief, his state claim [asserted under Article First § 4] is best adjudicated with state courts and the Court declines to exercise supplemental jurisdiction over this claim.") (citing 28 U.S.C. § 1367(c)).

ORDERS

The court enters the following orders:

(1) The request for compensatory and punitive damages from the defendants in their official capacities is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2). The request for declaratory relief from all defendants in their official

---

[4] "Connecticut courts have rejected the argument that the free-speech provisions of the Connecticut Constitution are independently actionable apart from a cause of action [for discharge or discipline in retaliation for the exercise of free speech] that is prescribed under § 13-52q." Jennings v. Town of Stratford, 263 F. Supp. 3d 391, 409 (D. Conn. 2017) (citing Thibault v. Barkhamsted Fire Dist., No. CV136008093S, 2013 WL 6038259, at *5 (Conn. Super. Ct. Oct. 21, 2013); Blue v. Carbonaro, No. CV146015705S, 2015 WL 3555294, at *21 (Conn.

capacities, all claims against Warden Faucher, Correctional Officer Wray and Correctional Officer Irizarry, the First Amendment retaliation claim and the Fourteenth Amendment procedural due process claim against Director Santiago and SRG Coordinator Aldi in their individual capacities, the Fourteenth Amendment procedural due process claim against Lieutenant Russell and Officer Payne related to their alleged failure to provide notice of a disciplinary report or provide him with a hearing to challenge the disciplinary report, the Eighth Amendment conditions of confinement claim and the claim asserted under Article First, § 5 of the Connecticut Constitution are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).   The court declines to exercise supplemental jurisdiction over the claims that the defendants violated Plaintiff's rights under Article First, §§ 4, 8, 9, 20 of the Connecticut Constitution.

The First Amendment retaliation claim will proceed against Lieutenant Russell and Officer Payne in their individual capacities and also against SRG Coordinator Aldi and Director Santiago in their official capacities and the Fourteenth Amendment procedural due process claim related to the SRG designation hearing will proceed against Lieutenant Eberle, Lieutenant Russell, Officer Payne and Megan E. Tyburski in his or her in individual capacities and also against Director Santiago and SRG Coordinator Aldi in their official capacities.

(2)     Within twenty-one (21) days of this Order, the Clerk shall prepare a

---

Super. Ct. May 11, 2015).

summons form and send an official capacity service packet to the U.S. Marshal's Service.   The U.S. Marshals Service shall serve the summons, a copy of the amended complaint and this order on Security Risk Group Coordinator John Aldi and Security Director Antonio Santiago in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     The Clerk shall verify the current work addresses of: Security Risk Group Coordinator John Aldi, Security Director Antonio Santiago, Lieutenant Julian Russell, Lieutenant Eberle, Correctional Officer Payne and Megan E. Tyburski and mail a copy of the amended complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address.   On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request.   If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Defendants Santiago, Aldi, Russell, Payne, Eberle and Tyburski shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.   If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable

claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)     The Clerk shall send a courtesy copy of the amended complaint and this order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

(8)     The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

 SO ORDERED.

Dated at Hartford, Connecticut this 30 day of April, 2020.

_____/s/_____
Vanessa L. Bryant
United States District Judge

31